Taft, J.
In its June 11 order, the commission specifically found that the ‘ ‘ 5% % rate of - return * * * applied to the # # * statutory rate base valuation * * * will provide an allowable dollar annual return sufficient to enable * * * a dividend of 6.5% on an amount of equity capital equivalent to the equity component of said statutory rate base valuation and afford a reservation for surplus on the basis of a pay-out ratio of approximately 69%.” As recognized in the commission’s brief, it is mathematically certain that such a dividend on the basis of such a pay-out ratio would require at least a 9.4% (actually 9.42%) return on that “equity component.”
Although the commission hinted in the January order that it was allowing only $14,800 interest on the debt component, the commission said nothing in its orders to indicate what portion or percentage of the “statutory rate base” should represent either (1) what it referred to as “the equity component” thereof or (2) what it referred to as the “debt component” thereof; and it said nothing to indicate what rate of interest should be allowed on the debt component.
However, a reading of the commission’s brief clearly indicates that the commission found that 50% of the statutory rate base, amounting to $953,245, was to represent the equity component thereof and 50% of the statutory rate base, amounting to $953,245, was to represent the debt component thereof, and that the historical cost of debt and the consequent approved rate of interest to be allowed on the debt component was 3.47%.
Since 3.47 % of that part of the statutory rate base allocated to the debt component equals 1.735% of the whole statutory rate base, and since 9.42% of that part of the statutory rate base al *12 located to the equity component equals 4.71% of the whole statutory rate base, and since 1.735% plus 4.71% equals 6.445%, it is apparent that the findings of the commission necessarily lead to a fair rate of return of 6.445% on the statutory rate base.
3.47% of the debt component of $953,245 results in an allowable dollar annual return for debt component of $33,078. 9.42% of the equity component of $953,245 results in an allowable dollar annual return for equity component of $89,795. The sum of the two figures is $122,873, or 6.445% of the statutory rate base.
However, the commission contends that it cannot allow more than $14,800 for the debt component because that is all the annual interest that the gas company actually is paying. If only $14,800 for the debt component is added to the $89,795 for the equity component, the result is substantially the dollar annual return to which the commission held the gas company entitled, and that dollar return represents only a 5.5% rate of return on the statutory rate base.
It is mathematically certain that $14,800 will pay interest at the rate of 3.47% per annum on only $426,513 of the $953,245 debt component of the statutory rate base. It necessarily follows that the commission’s 5.5% return allows no interest and no return at all with respect to $953,245 less $426,513 or $526,732 of the debt component of the statutory rate base. Stated another way, instead of allowing 3.47% interest on the debt component of $953,245, which interest would amount to $33,078, the commission has allowed only $14,800 of that $33,078 interest on the debt component.*
In our opinion, this refusal of the commission, to allow more than actual interest requirements of this utility for interest on the debt component of the statutory rate base, represents, as did some of the arguments in City of Cleveland v. Public Utilities Commission, 164 Ohio St., 442, 132 N. E. (2d), 216, an attempt “to circumvent the statutes of this state and the uniform decisions of this court with respect to the statutory rate *13 base.” In the Cleveland case, we rejected an argument “that the dollar amount of return should be based upon the public utility’s actual 'earnings requirements,’ ” and we stated that “actual earnings requirements” of a public utility are not ' ‘ really material in a proceeding of this kind. ’ ’
In determining the rate of return to be allowed a public utility under our statutes on its statutory rate base, what is to be allowed for interest on the debt component thereof is what would be reasonably necessary to pay interest on a debt equal in amount to the amount of such debt component even though what is so allowed for interest may be more or less than what is actually paid by such public utility on its existing indebtedness. In other words, in determining that rate of return under our statutes, consideration must be given to a corporation having a debt and an equity capital in a total amount substantially equal to the statutory rate base, and what is to be allowed for interest on the amount of such debt is what would be reasonably necessary to pay interest on that amount of debt, even though what is so allowed for interest may be more or less than what is actually paid by such public utility on its existing indebtedness. City of Cleveland v. Public Utilities Commission, supra (164 Ohio St., 442).
In arguing against such a conclusion, the commission contends that, in determining the federal income tax of this gas company, no greater deduction is allowed by the federal government on account of interest paid than an amount equal to the actual interest paid. However, it is obvious, as indicated in City of Cleveland v. Public Utilities Commission, supra, 445, 446 (164 Ohio St., 442), that, in a proceeding such as this, we should not be concerned, in determining the expense to be allowed for federal income tax liability, with the income tax or the interest actually paid by this gas company but with “taxes on income [and] interest on debts # * of a company of this kind organized to provide the public with the usé of property which is Such as this utility provides and which [property] has a value equal to the statutory rate base,” and that “the debt and stock of such a hypothetical company” will “necessarily be substantially equal to the statutory rate base. ’ ’ If such a company would pay more or less interest than this gas company actually does on its *14 debt, the greater or lesser amount of interest that such a company would so pay should, in a proceeding such as this, be used as a factor in determining the income tax liability that such a company would have.
In view of what we have said, it is apparent that the orders of the Public Utilities Commission appealed from are both unreasonable and unlawful and must be reversed. It is therefore unnecessary to consider the other questions raised by the gas company or by the commission’s motion to dismiss the appeal so far as it relates to those other questions.
By what we have said, we do not mean to approve or disapprove the findings of the commission as to the portions of the statutory rate base to be represented, by debt and by equity capital, or as to the rate of interest to be allowed on debt, or the rate of return to be allowed on equity capital, since no question with respect to those findings was presented to us for consideration. Likewise, we do not mean to suggest that the commission must allow a 6.445 Jo rate of return. Our reference thereto has been made merely to demonstrate that the findings of the commission cannot be reasonably reconciled with the rate of return approved by the commission.

Orders reversed.

Zimmerman, Matthias, Bell and Peck, JJ., concur.
Weygandt, C. J., and Herbert, J., dissent.

The difference between $33,078 and $14,800 is $18,278. However, as hereinafter pointed out, the allowance of that additional amount for interest on the debt component would probably reduce the allowable income tax expense by about % of that $18,278.